# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SEMINOLE TRIBE OF FLORIDA** | ) | |
| 6300 Stirling Road | ) | |
| Hollywood, FL  33024 | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA;** | ) | |
| | ) | |
| **KATHLEEN SEBELIUS**, in her official capacity | ) | |
| as Secretary, | ) | |
| U.S. Department of Health & Human Services | ) | |
| 200 Independence Ave, S.W. | ) | |
| Washington, DC 20201 | ) | |
| | ) | |
| **YVETTE ROUBIDEAUX**, in her official capacity | ) | |
| as Director, | ) | Civil Action No. 1:13-cv-00425 |
| Indian Health Service | ) | |
| 801 Thompson Avenue, Ste. 400 | ) | |
| Rockville, MD 20852-1627 | ) | **COMPLAINT** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Served:      The Honorable Eric H. Holder, Jr.
             Attorney General of the United States
             U.S. Department of Justice
             950 Pennsylvania Avenue, NW
             Washington, D.C.   20530-0001

             The Honorable Ronald C. Machen, Jr.
             United States Attorney for the District of Columbia
             Judiciary Center Building
             555 Fourth Street, NW
             Washington, D.C.   20530

## COMPLAINT

The Plaintiff, for its cause of action against the Defendants named above, alleges as follows:

## INTRODUCTION AND SUMMARY

1.        This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the Department of Health and Human Services ("HHS").  Plaintiff, the Seminole Tribe of Florida ("the Tribe"), seeks money damages under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.* ("CDA"), based on the Secretary's repeated violations of the Tribe's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for contracts entered under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638, as amended, 25 U.S.C. § 450 *et seq.*

2.        Defendants breached the Tribe's contracts by failing to pay the full CSC owed to the Tribe under the ISDEAA and the Tribe's contracts and annual funding agreements ("AFAs") for fiscal years 1995, 2000, 2002, 2004, 2005, 2006, 2007, and 2008 as reported to Congress.

3.        Defendants paid only a portion of the CSC owed under the Tribe's contracts, due to their misapplication of federal contracting and appropriations law.  In the appropriations acts each year, Congress imposed "caps" on aggregate CSC spending, which Defendants believed allowed them to underfund the Tribe's contracts.  This resulted in CSC "shortfalls," which the IHS calculated for each of the fiscal years from 1995, 2000, 2002, and 2004-2008 and reported to Congress.

4.        The Supreme Court found Defendants' practice unlawful, holding that the IHS is responsible for fully funding ISDEAA contracts—including all of the required CSC—without regard to congressionally instituted caps on CSC funding as a whole.  *Salazar v. Ramah Navajo*

*Chapter*, 567 U.S. ___, 132 S. Ct. 2181 (2012).  As long as there are sufficient appropriations to cover an individual contract's costs—even if there is not enough to fully fund all contracts—the Government's obligation to fully pay each individual contract remains.  In the Court's words, "The agency's allocation choices do not affect the Government's liability in the event of an underpayment." *Ramah*, 132 S. Ct. at 2192, quoting *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 641 (2005).

5.      The Tribe's claims are indistinguishable from those in *Ramah*.  The IHS received sufficient funds in each year at issue to fully pay the Tribe's CSC, although Congress limited the aggregate amount of funding for all CSC at the agency.  The shortfall in CSC owed to the Tribe is a result of the agency's allocation choices, but the Government remains liable for payment of the full amount.

## JURISDICTION AND VENUE

6.      This controversy arises under agreements between the United States and the Tribe for operation of Indian health programs carried out pursuant to ISDEAA contracts and funding agreements.  This Court has subject matter jurisdiction under the CDA, 41 U.S.C. § 7104(b), and the ISDEAA.  *See* 25 U.S.C. § 450m-1(a) (providing original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts).

7.      On October 3, 2011, the Tribe requested an IHS contracting officer's decision on claims for underpaid CSC for the fiscal years 1995, 2000, 2002, 2004, 2005, 2006, 2007, and 2008.  The Tribe also requested a contracting officer's decision on a supplemental request for FY 2006 on September 19, 2012.  The Tribe has received no response from the IHS on its October 3, 2011 requests.  The IHS denied the Tribe's supplemental request for FY 2006 in a letter received

- 3 -

February 3, 2013.  Since the IHS has not issued a decision on the claims submitted on October 3,

2011 within a reasonable time, they are deemed denied.  41 U.S.C. § 7103(f)(5).  The Tribe has

filed this action within twelve months of receiving the IHS's decision, as required by the CDA.

Accordingly, the Tribe has exhausted its administrative remedies, as required by the CDA.  41

U.S.C. § 7104(b).

8.      This Court has jurisdiction to review the IHS's decisions and deemed decisions

denying the Tribe's claims under the CDA and Section 110 of the ISDEAA.  41 U.S.C. § 7104(b);

25 U.S.C. § 450m-1(a); 25 U.S.C. § 450m-1(d).

9.      Venue is proper because Defendants Kathleen Sebelius in her official capacity as

Secretary of HHS is located in the District of Columbia.

## PARTIES

10.     Plaintiff Seminole Tribe of Florida is a federally recognized tribe.  The Tribe

operates a health services program that manages four health care clinics, a pharmacy, medical

records service, and dental health, behavioral health, environmental health, wellness, and

prevention programs for tribal members and other eligible beneficiaries.  The Tribe has contracted

with the IHS under the ISDEAA to carry out these functions.

11.     Defendant United States is a party to every ISDEAA contract, including the

Tribe's.  25 U.S.C. § 450*l*(c), Model Agreement § 1(a)(1); Title V Compact of Self-Governance

between Seminole Tribe of Florida and the U.S. Dep't of Health and Human Services, Indian

Health Service.

12.     Defendant Kathleen Sebelius is the Secretary of Health and Human Services, and

is charged by law with the responsibility for implementing the ISDEAA, and other health laws

benefiting Indians, on behalf of the United States.  25 U.S.C. § 450f(a)(1); 25 U.S.C. § 450b(i); 42 U.S.C. § 2001.  Defendant Sebelius is sued in her official capacity.

13.     Defendant Yvette Roubideaux is the Director of the IHS, the primary agency that carries out HHS's responsibility for implementing the ISDEAA, and other health laws benefiting Indians, on behalf of the United States.  *See* 25 U.S.C. § 1661.  Defendant Roubideaux is sued in her official capacity.

## STATEMENT OF FACTS

### The ISDEAA

14.     During all of the years at issue in this appeal, fiscal years 1995, 2000, 2002, and 2004-2008, the Tribe provided health care services to eligible Indians and other eligible beneficiaries pursuant to agreements entered into with the Secretary of the HHS and the IHS.  In 1995 and 2000, those agreements were made under Title I of the ISDEAA, 25 U.S.C. § 450 *et seq*. From 2002 on, those agreements were made under Title V of the ISDEAA, 25 U.S.C. § 458aaa *et seq*.  For the purposes of this action, there is no relevant difference between Title I and Title V agreements.  *See* 25 U.S.C. § 450j-1(a) (Title I provision governing funding, including for CSC); *id*. § 458aaa-15(a) (Title V provision stating that "[a]ll provisions of sections . . . 450j-1(a) through (k) . . . of this title . . . shall apply to compacts and funding agreements authorized by this part").

15.     The ISDEAA authorizes the Tribe, other tribal organizations, and tribes to assume responsibility to provide programs, functions, services and activities ("PFSAs") that the Secretary would otherwise be obligated to provide.  In return, the Secretary must provide the Tribe two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 450j-1(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2)

- 5 -

"contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. § 450j-1(a)(2) and (3).[1]  *See also* 25 U.S.C. § 458aaa-15(a) (Title V provision stating that "[a]ll provisions of sections . . . 450j-1(a) through (k) . . . of [Title 25 U.S.C.] . . . shall apply to compacts and funding agreements authorized by this part").

16.     There are three types of CSC: (1) start-up costs, which are one-time costs to plan, prepare for and assume operation of a new or expanded PFSA, *see* 25 U.S.C. § 450j-1(a)(5) & (6); (2) indirect costs, costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 450j-1(a)(2); and (3) direct CSC ("DCSC"), expenses directly attributable to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see id*. 25 U.S.C. § 450j-1(a)(3)(A).

17.     The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC.  25 U.S.C. § 450j-1(g) (emphasis added); *see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").  As noted above, one component of the required CSC under

---

[1] Section 106(a)(2) of the ISDEAA mandates as follows:

> (2)     There shall be added [to the 106(a)(1) amount] contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which—
> (A) normally are not carried on by the respective Secretary in his direct operation of the program; or
> (B) are provided by the Secretary in support of the contracted program from resources other than those under contract.

25 U.S.C. § 450j-1(a)(2).

section 106(a) is indirect cost funding, which covers administrative and overhead costs, allowing all program funds to be used to provide health care PFSAs for tribal members and other beneficiaries.

18.     For the Tribe, the "full amount" of indirect costs was (and is) determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base.  The Tribe's indirect cost rate, direct cost base, resulting indirect cost requirement, and any shortfall in funding were memorialized in the CSC "shortfall reports" IHS submitted to Congress each year in accordance with the ISDEAA, as discussed further below.  *See* 25 U.S.C. § 450j-1(c).

The CSC Shortfalls and the *Ramah* Case

19.     Despite the ISDEAA's requirements that the Secretary shall pay the full amount of CSC, the IHS has not done so.  Since at least fiscal year 1993, IHS has underpaid the vast majority of ISDEAA contractors, as documented in the agency's annual CSC "shortfall reports" to Congress.  IHS prepares the shortfall reports in compliance with ISDEAA section 106(c), which requires that the agency submit to Congress an annual report on the implementation of the ISDEAA, including:

> (1)  an accounting of the total amounts of funds provided for each program and the budget activity for direct program costs and contract support costs of tribal organizations under self-determination;
> (2)  an accounting of any deficiency in funds needed to provide required contract support costs to all contractors for the fiscal year for which the report is being submitted . . . .

25 U.S.C. § 450j-1(c).  Each IHS Area Office, including the Nashville Area (where the Tribe is located), prepares a shortfall report that shows how much each tribe and tribal organization in the Area was paid in CSC for the fiscal year, how much IHS would have paid had Congress appropriated sufficient CSC funding to pay every ISDEAA contractor in full, and the resulting

shortfall.  The reports reflect the data in the contracts, funding agreements, and indirect cost rate agreements of tribal contractors.

20.     Though the form of the shortfall reports has varied somewhat over the years, the essential information in the reports used to calculate the shortfalls has remained the same: the total CSC requirement minus the actual CSC paid by the IHS equals the CSC shortfall, which is reported to Congress.

21.     Prior to fiscal year 1998, Congress imposed no statutory restriction on availability of CSC, but IHS limited its payment to the amounts recommended in congressional committee reports.  In 2005, the U.S. Supreme Court held this practice unlawful, ruling that the appropriations available to pay tribes the full CSC due under section 106(a) and their contracts included the IHS's entire unrestricted lump-sum appropriation.  *Cherokee Nation*, 543 U.S. at 642-43 (2005).  The Court held that IHS should have reprogrammed funds to pay the Cherokee the full CSC due under its contracts.

22.     Despite the *Cherokee* ruling, Defendants continued their practice of paying less than full CSC to ISDEAA contractors. Defendants justified the systematic underpayment of CSC by pointing to the CSC spending "caps" Congress has placed in the appropriations acts beginning in fiscal year 1998.  *See, e.g.*, Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681, 2681–279 (1998) ("not to exceed $203,781,000 shall be for payments to tribes and tribal organizations for contract or grant support costs associated with [ISDEAA] contracts").

23.     In 2012, the U.S. Supreme Court considered the Government's responsibility to fully fund CSC during years when Congress placed a cap on the amount of funding available for CSC.  Echoing its reasoning in *Cherokee*, the Court held that—even if Congress appropriates

insufficient funds to cover the aggregate amount due to every contractor, but enough to pay any individual contractor's CSC—the Government is obligated to pay each contractor's CSC in full. *Ramah*, 132 S. Ct. at 2186.[2]

24.    The Court explicitly rejected arguments that the government is not liable for full CSC because Congress did not appropriate sufficient funding for all CSC, and that the ISDEAA states that the Secretary "is not required to reduce funding for programs, projects, or activities serving a tribe to make funds available to another tribe." *Ramah*, 132 S. Ct. at 2192, quoting 25 U.S.C. § 450j-1(b).  The Court found this idea was "inconsistent with ordinary principles of Government contracting law," and that the "agency's allocation choices do not affect the Government's liability in the event of an underpayment." *Id.*[3]

25.    The Tribe was one of the tribal contractors underpaid in FYs 1995, 2000, 2002, and 2004-2008 as a result of IHS's allocation choices.  According to the agency's own CSC shortfall reports, the Tribe suffered significant CSC underpayments in the fiscal years in question. The shortfalls documented in the reports for those years are summarized in the following table:

///

///

///

---

[2] "Once Congress has appropriated sufficient legally unrestricted funds to pay the contracts at issue, the Government normally cannot back out of a promise to pay on grounds of 'insufficient appropriations,' even if the contract uses language such as 'subject to the availability of appropriations,' and even if an agency's total lump-sum appropriation is insufficient to pay *all* the contracts the agency has made." *Ramah*, 132 S. Ct. at 2190 (internal quotations omitted) (emphasis in the original).

[3] The *Ramah* decision concerned CSC from the Bureau of Indian Affairs, but after that decision, the Court vacated a Federal Circuit case involving the IHS that had reached a contrary conclusion.  On remand, the Federal Circuit followed *Ramah*, noting the IHS appropriations were limited by identical language as the BIA appropriations in *Ramah*, and holding the Secretary was obligated to pay all of the tribal contractor's CSC.  *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 2012 WL 3599217, No. 2010-1013 (Fed. Cir., Aug 22, 2012) *on remand from Arctic Slope Native Ass'n., Ltd. v. Sebelius*, 133 S. Ct. 22 (2012), *vacating* 629 F.3d 1296 (Fed. Cir. 2010).

**Table 1.  Shortfall Summary**

| Year | Total Requirement ($) | Total Paid ($) | Shortfall ($) |
|---|---|---|---|
| 1995 | 889,185 | 861,411 | 27,774 |
| 2000 | 1,045,308 | 1,014,789 | 30,519 |
| 2002 | 1,338,873 | 1,267,745 | 71,128 |
| 2004 | 1,333,602 | 1,301,439 | 32,163 |
| 2005 | 1,333,372 | 1,252,739 | 80,633 |
| 2006 | 1,918,110 | 1,258,455 | 659,655 |
| 2007 | 1,692,999 | 1,376,741 | 316,258 |
| 2008 | 1,498,146 | 1,395,349 | 102,797 |
| TOTAL | | | **$1,320,927** |

26.     The Tribe presented claims based on the breaches of contract described above in letters to the IHS dated October 3, 2011.  The Tribe also submitted a supplemental claim letter for FY 2006 in the amount of $784,459 on September 19, 2012.  The IHS has failed to issue a decision on the claims submitted on October 3, 2011 so they are deemed denied.  *See* 41 U.S.C. § 7103(f)(5).  The IHS has denied the supplemental claim submitted on September 19, 2012, so the Tribe brings this action according to its statutory right.  41 U.S.C. § 7104(b).

<u>Miscalculation of Indirect Cost Rates</u>

27.     The shortfalls described above were exacerbated by IHS's failure to adjust the Tribe's indirect cost rate to account for systematic miscalculations on the part of the Department of Interior's National Business Center ("NBC"), the cognizant federal agency that calculates the Tribe's single, government-wide indirect cost rate.  The NBC follows Office of Management and Budget Circular A-87, which states that indirect cost rates are calculated by dividing the indirect cost pool (as mentioned in paragraph 16, above) by the total amount of direct cost base funding for all programs the Tribe carries out, not just IHS programs.

28.       Often, other federal or state funders pay little or no indirect costs.  NBC's inclusion of these programs in the direct cost base inflated the denominator of the rate-making equation, resulting in a lower indirect cost rate.

29.       When determining the amount of indirect costs owed to the Tribe, IHS employed this "diluted" indirect cost rate, resulting in a systematic underpayment of indirect costs and making it impossible for the Tribe to carry out IHS programs at the Secretarial level as mandated by the ISDEAA.  The Tenth Circuit held that this practice is unlawful, and the government is responsible for fully funding a contractor's indirect costs.  *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1997).  However, rather than adjust the artificially low rate by removing non-paying agencies from the direct cost base of the rate-making equation, the IHS in the relevant years employed the diluted NBC indirect cost rate, thus the Tribe's indirect cost funding.

30.       In 2006, as the Tribe's supplemental claim letter details, exclusion of non-paying agencies from the base would have produced a corrected rate entitling the Tribe to additional indirect cost funding of $16,761.

Miscalculation of Recoveries in "Carryforward" Calculations

31.       NBC miscalculated the Tribe's indirect cost rate in a second way: by failing to credit the Tribe's indirect cost pool when the IHS paid too little indirect costs.  The Tribe employs fixed-with-carryforward rates.  In this system, over- and under-recoveries are factored into the calculation of future year rates.  Over-recoveries in a preceding period are deducted from the indirect cost pool, reducing the subsequent period's rate to compensate the Government, while under-recoveries are supposed to be added to the indirect cost pool to raise the future rate to compensate the Tribe.

32.     But the Tribe's under-recoveries in past years were not added to the indirect cost pool for purposes of subsequent rate calculations, as they should have been under the fixed-with-carryforward system to raise the rate and compensate the Tribe.  Instead, over-recoveries were shifted into a "shortfall column," a device created by NBC solely for Indian tribes and tribal organizations due to the CSC appropriations "caps."  In light of the Supreme Court's ruling in the *Ramah* case cited above, this maneuver illegally increased the Tribe's CSC shortfalls.

33.     When calculating the Tribe's indirect cost funding requirement, IHS failed to adjust the Tribe's rate to correct for NBC's illegal use of the "shortfall column."  In 2006, as detailed in the Tribe's supplemental claim letter, adding the shortfall column amount indirect cost pool for purposes of the ratemaking calculation would have produced a corrected rate entitling the Tribe to an additional $55,597.

### Unpaid Direct CSC

34.     In addition to the shortfalls of indirect CSC described above, the IHS failed to pay the Tribe the full amount its direct CSC.  These amounts are used to pay for activities not contained in the indirect cost pools, and are used to cover costs incurred such as unemployment taxes, workers' compensation insurance costs, other insurance costs, facilities support costs otherwise unpaid, training, or other costs not included in the indirect cost pools.

35.     Like the indirect CSC shortfalls, the IHS reduced the amounts of direct CSC payments due to "caps."  Therefore, the same rationale used to find these reductions improper in *Ramah* renders these reductions improper as well.

### Indirect Costs on Unpaid Direct CSC

36.     The IHS CSC shortfall reports discussed above break out the shortfalls into underpayments of direct CSC and, in a separate column, indirect CSC.  As discussed above, direct

CSC comprises expenses directly attributable to a certain program or activity but not captured in either the indirect cost pool or the program amount due under section 106(a)(1).[4]  Direct CSC is part of the direct cost base, and thus generates indirect cost funding through application of the "rate-times-base" method described in paragraph 18 above.  *See* IHS, Indian Health Manual § 6-3.4.E (2007) ("The DCSC, along with other Section 106(a)(1) funds, will be considered part of the recurring base of the award.").

37.     Underpayments of direct CSC, therefore, lower the Tribe's indirect cost funding as well.  The IHS shortfall reports, however, do not capture this additional indirect cost shortfall, because the agency added to the direct cost base column only the amount of direct CSC paid, not the amount from the "DCSC Negotiated" column.

38.     The unpaid indirect costs on unpaid direct CSC must also be considered as damages.  This amount can be determined each year by multiplying the negotiated indirect cost rate by the direct CSC shortfall memorialized in that year's CSC shortfall report.

## CAUSE OF ACTION – Breach of Contract

39.     All prior allegations are adopted by reference.

40.     The Tribe's contracts incorporate the statutory duty to fully fund CSC.  25 U.S.C. § 450j-1(a) & (g); *see also, e.g.*, 2007 Annual Funding Agreement § 3(b).  This duty was affirmed by the Supreme Court in *Ramah,* which other courts have followed.  Despite this statutory and contractual duty, during the years in question, the IHS failed to provide the full funding due under the Contract.

---

[4] *See* 25 U.S.C. § 450j-1(a)(3)(A).

41.     Instead, the IHS paid significantly less than its full CSC requirement in fiscal years 1995, 2000, 2002, and 2004-2008, as acknowledged in IHS's own shortfall reports.  In doing so, the IHS violated the ISDEAA's requirement of full payment from available appropriations without regard to total appropriations or any congressionally imposed aggregate caps, as affirmed by the Supreme Court in *Ramah*, and breached its agreements with the Tribe, which incorporate the full-funding requirement of section 106(a).

Claim 1: FY 1995

42.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for 1995 was $889,185, yet the IHS paid only $861,411.  Therefore, the Tribe asserts a claim under the ISDEAA and the Contract in the amount of **$27,774**, plus indirect costs on unpaid direct CSC, plus expectancy and other damages in an amount to be established by the evidence.

Claim 2: FY 2000

43.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for 2000 was $1,045,308, yet the IHS paid only $1,014,789.  Therefore, the Tribe asserts a claim under the ISDEAA and the Contract in the amount of **$30,519**, plus indirect costs on unpaid direct CSC, plus expectancy and other damages in an amount to be established by the evidence.

Claim 3: FY 2002

44.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for 2002 was $1,338,873, yet the IHS paid only $1,267,745.  Therefore, the Tribe asserts a claim under the ISDEAA and the Contract in the amount of **$71,128**, plus indirect costs on unpaid direct CSC, plus expectancy and other damages in an amount to be established by the evidence.

Claim 4: FY 2004

45.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for 2004 was $1,333,602, yet the IHS paid only $1,301,439.  Therefore, the Tribe asserts a claim

under the ISDEAA and the Contract in the amount of **$32,163**, plus indirect costs on unpaid direct CSC, plus expectancy and other damages in an amount to be established by the evidence.

<u>Claim 5: FY 2005</u>

46.      As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for 2005 was $1,333,372, yet the IHS paid only $1,252,739.  Therefore, the Tribe asserts a claim under the ISDEAA and the Contract in the amount of **$80,633**, plus indirect costs on unpaid direct CSC, plus expectancy and other damages in an amount to be established by the evidence.

<u>Claim 6: FY 2006</u>

47.      The Tribe's initial claim, based on the IHS shortfall report, was for $659,655**.**  The Tribe's supplemental claim letter for FY 2006, submitted on September 19, 2012, adjusts and augments the claim amounts based on additional financial analysis and new legal theories.  As detailed in that letter (and described above), the Tribe claims $416,967 in indirect cost shortfall, $230,056 in direct CSC shortfall, $65,078 in indirect costs on unpaid direct CSC, $16,761 for rate miscalculation (see paragraphs 27-30 above), and $55,597 for a wrongful carryforward adjustment (see paragraphs 31-33).  The total claim for FY 2006 is the sum of these amounts: **$784,459**.

<u>Claim 7: FY 2007</u>

48.      As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for 2007 was $1,692,999, yet the IHS paid only $1,376,741.  Therefore, the Tribe asserts a claim under the ISDEAA and the Contract in the amount of **$316,258**, plus indirect costs on unpaid direct CSC, plus expectancy and other damages in an amount to be established by the evidence.

<u>Claim 8: FY 2008</u>

49.      As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for 2008 was $1,498,146, yet the IHS paid only $1,395,349.  Therefore, the Tribe asserts a claim

under the ISDEAA and the Contract in the amount of **$102,797**, plus indirect costs on unpaid

direct CSC, plus expectancy and other damages in an amount to be established by the evidence.

**PRAYER FOR RELIEF**

50.     The Plaintiff therefore requests that this Court:

A.   Award the Tribe **$1,445,731** in damages for unpaid CSC, as detailed in the
     IHS CSC shortfall reports and paragraphs 42-49 above;

B.   Award damages for miscalculations of indirect costs rates in each year in an
     amount to be determined by the proof;

C.   Award damages for miscalculated "over-recoveries" and unpaid "under-
     recoveries" in each year in an amount to be determined by the proof.

D.   Award damages for unpaid direct CSC in each year in an amount to be
     determined by the proof;

E.   Award damages for indirect costs on unpaid direct CSC in each year in an
     amount to be determined by the proof;

F.   Award such other damages as may be proven in this action;

G.   Order the payment of interest on these claims pursuant to the CDA, 41 U.S.C.
     § 7109, and the Prompt Payment Act, Chapter 39 of Title 31, United States
     Code;

H.   Award the Tribe its attorney fees and expenses pursuant to the Equal Access
     to Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 450m-1(c), and other
     applicable law; and

I.   Grant the Tribe such other and further relief as the Court deems appropriate.

Respectfully Submitted,

  s/ Caroline Mayhew
Caroline Mayhew (DC Bar No. 1011766)
Hobbs, Straus, Dean, & Walker LLP
2120 L St. NW, Suite 700
Washington, DC  20037
202-822-8282 (Tel.)
202-296-8834 (Fax)


Geoffrey D. Strommer, *pro hac vice pending*
Stephen D. Osborne, *pro hac vice pending*
Hobbs, Straus, Dean & Walker, LLP
806 SW Broadway, Suite 900
Portland, OR 97205
503-242-1745 (Tel.)
503-242-1072 (Fax)


Attorneys for the Seminole Tribe of Florida.

DATED April 3, 2013.